Rachel Mayer et al., Appellees, v. Metropolis Theatre Company et al., Appellants.
Appeal of Metropolis Theatre Company, Appellant.

Gen. No. 40,631.

Opinion filed June 21, 1939.

ELIAS MAYER, of Chicago, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellees; HERBERT BECKER, FRANK D. MAYER and ED-WIN A. ROTHSCHILD, all of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Levy Mayer acquired the title in fee simple to two parcels of real estate with a combined frontage of 100 feet, situated on the north side of Randolph street

between Dearborn and State streets in Chicago, subject to two 99-year leases, one beginning May 1, 1902, and ending April 30, 2001, and the other beginning May 1, 1903, and ending April 20, 2002. Levy Mayer, the fee owner, died August 14, 1922, and plaintiffs are trustees under his last will, and are now the owners of the parcels in fee simple. Defendant, the Metropolis Theatre Company became the owner and lessee of both 99-year leases by an assignment to it dated September 12, 1905. In the assignment the Metropolis Theatre Company expressly assumed all of the obligations, covenants, undertakings and agreements in the leases. By an indenture dated April 1, 1924, it leased and demised the premises to the United Masonic Temple Corporation for a term commencing May 1, 1924, and ending April 29, 2001. The United Masonic Temple Corporation agreed to pay a rental of $75,000 for the first year, $100,000 for each of the next 15 years, $105,000 for each of the next 15 years, $110,000 for each of the next 15 years, $120,000 for each of the next 15 years and $125,000 for each year of the balance of the term. The sublessee also agreed to pay all taxes, levies, assessments, charges and other impositions on the said demised premises ''before the same shall become delinquent under the terms of the statutes in force at the time such taxes, levies, assessments, charges and other impositions shall be levied or assessed, and in apt time to prevent any sale or forfeiture of the demised premises, or any part thereof or any buildings situated thereon.'' By mesne assignments the leasehold estate of the United Masonic Temple Corporation became vested in and is now owned by the 32 West Randolph Corporation. In the lease of May 1, 1903, the lessees covenanted and agreed with the lessors that ''they will pay, in addition to the rents therein reserved, all water taxes, assessments, liens and impositions, general and special, ordinary and extraordinary, of every nature and kind whatsoever levied,

imposed or assessed upon the demised premises and the buildings or improvements thereon, or levied, imposed or assessed upon the interest of the lessors in or under said lease, in apt time to prevent any sale or forfeiture therefor, or any interest or other penalty for delay in payment or for any part thereof.'' The lease of March 27, 1902, also contained the language quoted. The leases of May 1, 1903, and March 27, 1902, provided among other things that ''the lessors shall have a first and valid lien (which is hereby given them) upon the rights and interests of the lessees under this lease to secure payment of any and all moneys, at any time becoming due to the lessors under the provisions of this lease, and to secure the prompt performance and fulfillment by the lessees of each and every one of their engagements and undertakings hereunder.'' The real estate adjoining on the east with a frontage of 40 feet on Randolph street, is owned by the trustees under the last will and testament of John R. Thompson, deceased. In 1924 the trustees of the Thompson estate made a long term lease on the east 40 feet to the predecessors of the 32 West Randolph Corporation. The latter corporation acquired the lease by mesne assignments and is now the owner thereof. Hence, the predecessor of 32 West Randolph Corporation acquired a leasehold estate covering the entire 140 feet. The 100 feet to the west was covered by a sublease from the Metropolis Theatre Company, and the 40 feet to the east was acquired by a direct lease from the trustees of the Thompson estate. The predecessor of 32 West Randolph Corporation erected a modern 23-story building on the entire 140 feet, known as the Chicago Real Estate Board Building. The building constitutes a unit on the parcels of land owned by the plaintiffs and the Thompson trustees. It contains stores, offices, lodge halls and a large moving picture theatre having a capacity of 4,500 people, and is occupied by tenants of the 32 West Randolph Corporation.

Some of the tenants occupy space which is entirely within the boundary of the premises owned by plaintiffs. Other tenants occupy space partly upon the premises owned by plaintiffs and partly upon the premises owned by the Thompson trustees.

On November 30, 1938, plaintiffs filed their verified complaint in the circuit court of Cook county, and in addition to the facts above recited, averred that there were delinquencies in the payment of taxes on the two parcels owned by them in the amount of $65,000 and interest thereon amounting to $20,000; that defendant Metropolis Theatre Company made default under its leases by reason of its failure to pay the taxes; that in consequence, plaintiffs have a first and valid lien on the interest and rights of the Metropolis Theatre Company under the leases; that plaintiffs seek to enforce foreclosure of said lien; that from the time of the execution of the leases from the Metropolis Theatre Company to 32 West Randolph Corporation until February 1, 1938, the Metropolis Theatre Company collected as rents for plaintiffs' two parcels, in excess of $750,000 more than the rent payable during that time to plaintiffs under their leases to Metropolis Theatre Company; that (on information and belief) Metropolis Theatre Company disbursed substantially all of its receipts to its stockholders as dividends; that Metropolis Theatre Company is insolvent and unable to pay the taxes which are in default; that despite repeated attempts, Metropolis Theatre Company has failed and refused to pay the defaulted taxes and has admitted to plaintiffs that it has no funds with which to pay said defaulted taxes, and that it cannot obtain any credit with which to obtain funds; that the 32 West Randolph Corporation is collecting rents from the premises; that (on information and belief) the 32 West Randolph Corporation is in default to the extent of over $85,000 in the payment of rent to Metropolis Theatre Company; that plaintiffs allege that the 32

West Randolph Corporation, through its manager, has admitted to plaintiffs that it has not sufficient property or credit to pay the defaulted taxes; that certain named tenants occupy space in the building which is entirely within the boundary of the premises owned by plaintiffs, and that numerous other tenants occupy like space; that the rents payable by tenants who occupy space which is wholly within the boundaries of the premises owned by plaintiffs are subject to the prior lien of plaintiffs created by the leases of May 1, 1903, and March 27, 1902; that such rents should in equity be applied to the payment of defaulted taxes; that a receiver should be appointed to collect such rents payable from such tenants to the 32 West Randolph Corporation; that the tenants should be enjoined from making any payments to 32 West Randolph Corporation, and that the 32 West Randolph Corporation should be enjoined from making any payments to Metropolis Theatre Company until the tax defaults have been cured; that the Southern Theatre Properties, Inc., and Gimbels, Inc., are tenants of the 32 West Randolph Corporation; that said tenants occupy space under leases, the terms of which are not known, which space is partly on the premises of the Thompson trustees; that (on information and belief) no separate rent is provided for in the leases for the portion of the premises occupied by them situated on the premises owned by plaintiff, or for the portion situated on the property owned by the Thompson trustees; that plaintiffs are entitled to have a determination made as to what percentage of the rents payable by the said tenants is properly allocable to the portion of the premises owned by plaintiffs; that upon such determination the proportion should be determined to be subject to the lien of plaintiffs; that such portion of the rent as shall be allocable to plaintiffs should not be paid by the 32 West Randolph Corporation to Metropolis Theatre Company, but should be applied to

the payment of defaulted taxes; that a receiver should be appointed to collect the rents so allocable to plaintiffs' premises; that the subtenants should be enjoined from making payments to 32 West Randolph Corporation of any rent that is determined to be allocable to plaintiffs; that the 32 West Randolph Corporation should be enjoined from making any payments to Metropolis Theatre Company of any rents of subtenants determined to be allocable to plaintiffs; that plaintiffs have not elected to exercise the rights and privileges to them reserved in the leases of May 1, 1903, and March 27, 1902, to forfeit said leases by reason of the defaults of Metropolis Theatre Company in the performance of the covenants therein contained, and "do not by this complaint seek to in any way invalidate or affect any of the tenants of defendant 32 West Randolph Corporation, nor to disturb or impair the estate or interest of any of said subtenants to those portions of the premises therein described and by them respectively occupied, but seek to enforce the lien by said lease created, upon the interest of the lessee in said leasehold estates and in the building and improvements upon the demised premises. Plaintiffs further allege that they have not elected to terminate said leases by reason of said default in the payment of taxes because they believe that by forfeiting said leases they would suffer great and irreparable damage and injury because said subtenants of 32 West Randolph Corporation might then have the right to terminate their sub-leases, and under present conditions it would be difficult to replace said tenants in case they should terminate their sub-leases and it would be difficult to obtain from such new tenants the same rentals provided for in the present sub-leases." The complaint prayed that the court ascertain the amount in default in the payment of taxes and the interest due on the taxes; that such sums be declared to be a valid lien on the interest of the Metropolis Theatre Company under

the leases and in and to all of the buildings and improvements upon the demised premises, and that in default of payment, the interest of Metropolis Theatre Company in the buildings and improvements and its interest in the leases of May 1, 1903, and March 27, 1902, be sold under the direction of the court.

On December 13, 1938, the Metropolis Theatre Company filed a verified answer wherein it admitted the basic facts. It denied the tax and interest delinquencies in the amounts claimed; denies that plaintiffs were not at the time of the filing of the bill, entitled to foreclose their lien; admits that it collected $750,000 more than the ground rental payable to plaintiffs, but denied that it disposed of substantially all of the receipts to its stockholders as dividends; admitted that plaintiffs had demanded payment of the defaulted taxes; denies that it refused to pay the defaulted taxes and admits that ''at this time it has not adequate funds with which to pay such taxes, and denies that it has admitted that it could not obtain credit with which to obtain funds for the payment of said taxes''; denies that the Metropolis Theatre Company is insolvent, asserts that it is amply solvent, and states that ''the buildings have a present value of at least $1,500,000.00 and that this defendant has no liability whatsoever except its liability for the payment of said defaulted taxes; admits that it is unable temporarily to pay the taxes now claimed to be in default, but alleges that the current income from the premises is sufficient to pay and discharge all taxes now in default, and all taxes accrued for the year 1938, within a period of thirteen months from the date of the filing of the complaint herein, and that all revenue has been since February 1, 1938, and now is being applied to the payment of taxes.'' Defendant alleges that since February 1, 1938, no payments have been made to this defendant by the 32 West Randolph Corporation and defendant does not intend to, nor will it receive any such payments until under the present

arrangement, all defaulted taxes have been paid; alleges that if an injunction against 32 West Randolph Corporation restraining it from making payments to this defendant, or an injunction against defendant Metropolis Theatre Company, from receiving payments of rent from 32 West Randolph Corporation until the alleged defaults in the payment of taxes have been cured, appears to the court to be equitable, defendant is willing and now offers to consent to the issuance of such injunction. As a separate defense, Metropolis Theatre Company asserts that the attorneys for plaintiffs and their predecessors acted as attorneys for the Metropolis Theatre Company. This portion of the answer sets up various negotiations in which the attorneys for plaintiffs participated. It also states that on September 15, 1935, an agreement was entered into between 32 West Randolph Corporation and the Thompson trustees by which payment of portions of the rent to become due from 32 West Randolph Corporation was deferred, and that at that time (September 15, 1935) there was unpaid on taxes levied against the real estate of plaintiffs, an aggregate amount of approximately $241,000, and that the contract of September 15, 1935, had been carried out up to the time of the filing of the complaint; that defendant at all times paid its rent under the two underlying leases; that since February 15, 1935, taxes levied for the years 1929 and 1930 aggregating $241,000 and interest thereon had been fully paid; that substantially all of the taxes for the years 1931 to 1937 have been paid, and in addition, approximately $40,000 of interest, and that the only back taxes remaining unpaid are portions of the taxes for the years 1931 to 1937 inclusive, and that one of the trustees and attorneys for the estate were at all times kept fully advised of the manner in which the taxes were being paid; that the theatre premises located in the building were leased prior to 1936 at an annual rental of $327,000, and were

thereafter leased by defendant 32 West Randolph Corporation to the Oriental Theatre Company for a term commencing January 1, 1936, and expiring December 31, 1973, at an annual rental of $200,000 and additional sums contingent upon the gross volume of receipts by the lessee; that during the month of April, 1938, the Oriental Theatre Company being in default in payment of rents, requested a reduction; that negotiations for such reduction failed; that on May 26, 1938, the Oriental Theatre Company abandoned the portion of the premises usable for a theatre, at which time it was in debt for back rent to 32 West Randolph Corporation in the sum of $40,000; that until November 19, 1938, the theatre premises were closed; that because of the closing of the theatre other tenants in the building who depended upon patronage of persons attending the theatre were unable to continue payment of their rentals and defaults occurred therein and rentals were temporarily reduced, all of which resulted in a diminution of the income of defendant 32 West Randolph Corporation to the extent of over $110,000, that because of such conditions defendant was unable to continue payment of defaulted taxes as contemplated in the agreement of September 15, 1935; that if such abandonment by the Oriental Theatre Company and consequent defaults by other tenants had not occurred, all taxes in default would have been fully paid, together with interest thereon; that plaintiffs were kept fully advised as to the manner in which the premises were being managed and operated and the revenues applied; that in May, 1938, several meetings were held at the offices of one of the plaintiffs, in which the facts were fully disclosed; that it was agreed that the moneys then on hand amounting to approximately $56,000 should be applied to the payment of taxes assessed against the properties of plaintiffs and of the Thompson estate; that at the meeting held on May 9, 1938, it was agreed that it was advisable to suspend the agreement of

September 15, 1935, and the provisions of the leases of Metropolis Theatre Company to 32 West Randolph Corporation and of the Thompson estate to 32 West Randolph Corporation, and to apply all income coming into the hands of 32 West Randolph Corporation over and above operating expenses, to the payment of taxes on the properties of plaintiffs and the Thompson estate; that thereupon the $56,000 was so applied to the payment of taxes; that since then all of the available revenues that have come into the hands of 32 West Randolph Corporation have been applied to the payment of taxes; that no sum whatsoever since February 1, 1938, has been paid by the 32 West Randolph Corporation either to Metropolis Theatre Company or to the trustees of the Thompson estate; that since February 1, 1938, all revenues have been applied to the payment of taxes, and that the amount of such payment upon the premises of plaintiffs aggregates $105,000 of taxes and approximately $3,000 of interest; that under the agreement reached at the conference of May 9, 1938, it was contemplated that by the application of all of the available revenue received by the 32 West Randolph Corporation to the payment of taxes then in default, such taxes and interest would be paid within one year from that date; that plaintiffs accepted the benefits of the agreements of September 15, 1935, and May 9, 1938, and "have benefited thereby by the reduction in the defaulted taxes levied against their property from approximately $240,000.00, which was past due on September 15, 1935, and taxes for the years 1936 and 1937 of $170,000.00, to approximately $65,000.00 of taxes alleged to be past due on the date of the filing of the complaint, and that it is inequitable and unconscionable that plaintiffs should not be bound by and required to perform the agreement of May 9, 1938, until a breach thereof by the defendant 32 West Randolph Corporation or the Thompson trustees; that plaintiffs by their conduct, acquiescence and approval of said agreements

and arrangements are estopped and should in equity and good conscience be estopped from obtaining the relief prayed for in their complaint, and that plaintiffs have waived the right to demand payment of taxes except as is provided under said agreements; that an appointment of receivers as prayed in the complaint would result in a complete disorganization of the orderly conduct of the property and improvements thereof on plaintiffs and Thompson trustees, and result in a great loss of rental and seriously impair the value of its leases, and other irreparable damage''; that the 32 West Randolph Corporation entered into a lease with the Southern Theatre Company, under the terms of which the latter opened the Oriental Theatre on or about November 19, 1938; that it is operating the same, and that out of the revenues arising from the balance of the property, sufficient revenue will be realized so that on or before December 1, 1939, all taxes now past due on the property of plaintiffs, together with taxes accruing for 1938 which will be payable during 1939, can be fully paid and discharged, and all rents accruing to plaintiffs during 1939 will be fully paid so that there will be no default of any kind or character; that in 1925 the United Masonic Corporation erected a building on the said premises costing approximately $4,500,000; that on the date of the filing of the bill of complaint, the revenues arising therefrom, based upon the current rentals now being received from defendant Southern Theatre Company, is not less than $370,000 per year, and is sufficient to pay operating expenses, taxes and ground rents, to plaintiffs; that the leasehold interests of defendant under the two ground leases have a present value of not less than $400,000; that the improvements upon the premises owned by the complainants and the leasehold interest of defendant, are ample and adequate security for the payment of back taxes and interest; that on or about November 9, 1938, plaintiffs advised defendant that they proposed to reach an allo-

cation agreement with the Thompson estate in the near future and stated that plaintiffs would serve notice on defendant, and that upon the service of such notice, defendant, by virtue of the terms and provisions of the 99-year leases, would have a period of 90 days within which to cure such default, and as an alternative proposed that plaintiffs would agree not to pursue the remedy of forfeiture of the leases of defendant for failure to pay taxes if defendant would consent to a complete revision of the said two leases, under which plaintiffs would receive the ground rent, in said leases reserved, amounting to $27,000 per annum, and in addition thereto, 75 per cent or three-fourths of any and all profit that defendant might realize from rents received from the 32 West Randolph Corporation over and above the fixed rent payable to plaintiffs of $27,000 per annum; that defendant alleges that the complaint was filed for the purpose of forcing these defendants to acquiesce in the proposal and consent and agree thereto; that in equity and good conscience the court should not aid the complainant in overreaching the defendant by forcing the defendant into a position where it would helplessly consent to that proposal.

Plaintiffs filed a verified reply on December 15, 1938, and deny that defendant has a lien upon the buildings or that the buildings have a value of at least $1,500,000, or that the income is sufficient to pay and discharge all taxes now in default and taxes accrued for the year 1938, within a period of 13 months from the day of filing the complaint. Plaintiffs state (on belief) that the portion of the building on the premises of the plaintiffs is of no value; that the income that can be produced from that portion of the building is insufficient to pay the cost of operation and taxes; that in case the separate occupancy of plaintiffs' building should ever become necessary, plaintiffs would be required to rearrange and rebuild portions of the building situated on the plaintiffs' premises, and the cost of such rearrangement and reconstruction to plaintiffs would amount to

hundreds of thousands of dollars. Plaintiffs deny that their law firm attended to all legal matters arising in connection with the conduct of the business of defendant, but admit that a member of the firm attended to some of the legal matters of defendant; admits that one of the trustees in his capacity as a lawyer was consulted by Metropolis Theatre Company in December, 1934, at which time he was asked to advise it with respect to certain defaults in payment of taxes that had been made by its tenant, 32 West Randolph Corporation. Plaintiffs assert that when the firm of attorneys now representing them acted for parties in the various negotiations mentioned in the answer, they were not acting for plaintiffs. Plaintiffs state (on information and belief) that at the time of filing the complaint, the amount of taxes in default was $65,458.64, and interest at that time amounted to $20,137.43; that prior to May, 1938, plaintiffs had no knowledge of the manner in which the premises of plaintiffs and of the Thompson trustees were being managed and operated and its revenues used and applied; denies that plaintiffs and Metropolis Theatre Company and the Thompson trustees agreed that it was advisable to suspend the agreement of September, 1935, and also the provisions of the lease of defendant Metropolis Theatre Company to 32 West Randolph Corporation, and of the Thompson trustees to 32 West Randolph Corporation, and apply all the revenue to the payment of taxes, and assert on the contrary that at the meeting of May 9, 1938, representatives of the 32 West Randolph Corporation stated that unless payment was made on defaulted taxes, there would be great danger of the appointment of a receiver under the so-called Skarda Act; that the Randolph Corporation requested permission from the Thompson trustees and Metropolis Theatre Company to apply the moneys on hand and thereafter to be received, toward the payment of defaulted taxes before paying any rent to the Thompson trustees or Metropolis Theatre Company; that the Thompson trustees refused to

consent at the meeting and stated that they wished to consider the matter further; that representatives of the Metropolis Theatre Company at the meeting stated that while they favored applying the moneys as suggested, they would refer the matter to their stockholders and directors for a decision. Plaintiffs state that the whole discussion at the meeting was limited to whether the Thompson trustees and Metropolis Theatre Company would waive or suspend any of their rights; that there was no discussion with respect to plaintiffs waiving or suspending any of their rights under their leases, or postponing the payment of any rentals. They state there was a lengthy discussion as to the relationship between Balaban & Katz Corporation and Oriental Theatre Company as to the possible liability of Balaban & Katz for the rent of the theatre; that it was decided at the meeting that a full investigation should be made, and that such investigation was pursued for some months thereafter; that plaintiffs did not learn that the investigation had been terminated until October 25, 1938; that in 1935 plaintiffs learned for the first time of the substantial tax defaults; that plaintiffs did not take action at that time because representatives of the Metropolis Theatre Company had been assured that under a deferment agreement then contemplated, plaintiffs could not possibly sustain any loss or be in any way prejudiced. Plaintiffs state that defendant Metropolis Theatre Company does not own or have any interest whatever in the building on the premises; that the building is subject to a mortgage dated May 1, 1935, by defendant 32 West Randolph Corporation to the Continental Illinois National Bank and Trust Company of Chicago, as trustee, securing bonds in the aggregate principal amount of $2,678,500, on which no principal or interest has ever been paid; deny that on the day the bill was filed the revenues based on the current rentals being received from Southern Theatre Company and other tenants, are not less than $370,000 per annum, and are

sufficient to pay operating expenses, taxes and ground rents to plaintiffs at $27,000 per annum, and leave an average of not less than $65,000, and assert (on information) that the annual operating expenses of the entire building are $180,000; that even though it be assumed that the revenue from said entire building be $370,000 per year, it would leave a balance of only $74,000 available for the payment of rents amounting to $27,000 annually for the plaintiffs, and $100,000 (of which $25,000 a year has been deferred by the September 15, 1935, agreement) payable annually to defendant Metropolis Theatre Company, and $50,000 (of which $7,500 a year has been deferred under said deferment agreement) payable annually to the Thompson trustees, and plaintiffs theretofore say that the income of the entire building is not sufficient to enable the 32 West Randolph Corporation to cure its defaults or to prevent additional defaults, nor is it sufficient to enable the defendant Metropolis Theatre Company to cure its defaults or prevent additional defaults; that both defendant Metropolis Theatre Company and 32 West Randolph Corporation are insolvent, and that as appears from the answer, even if the revenues of the building were as stated, and even if there would be available to defendant Metropolis Theatre Company the sum of $42,000 annually, it would require at least two years to make good the present tax default and that the tax default could not possibly be cured by December 1, 1939, as stated by defendant in its answer. Plaintiffs deny that the leasehold interest of defendant under the two current leases has a present value of not less than $400,000 and assert that the leases have no value whatever; deny that the improvements on the premises and the leasehold interest of defendant are ample and adequate security for the payment of back taxes and interest now in default; deny that the complaint was filed for the purpose of forcing defendant to acquiesce in the proposal and consent and agree thereto. The reply further states that on October 25,

1938, they were informed by a representative of 32 West Randolph Corporation that all negotiations between it and the Oriental Theatre Company and Balaban & Katz had been concluded about two weeks before and that the 32 West Randolph Corporation had obtained a new tenant, the Southern Theatre Company, which was contemplating opening the theatre about the middle of November, 1938, and that the rental to be paid by the new tenant was dependent upon the gross income of the theatre; that the representative of the 32 West Randolph Corporation asked one of the trustees on October 25, 1938, to give plaintiffs' consent to the proposed lease to the Southern Theatre Company; that the trustee stated that in view of the fact that the defaulted taxes had not been cured notwithstanding his urgent request repeatedly made ever since May 6, 1938, he could not consent to the lease; that the said trustee on October 26, 1938, informed the officers of the Metropolis Theatre Company that in view of the changed conditions, neither he, in his capacity as a lawyer, nor his firm, would any further represent the Metropolis Theatre Company, and that he insisted that the tax defaults be cured within a week; that on November 8, 1938, an officer and two attorneys of Metropolis Theatre Company called on one of the trustees and asked for further indulgence; that the trustee informed them that plaintiffs' only wish was to have the defaults made good promptly, but that if that could not possibly be done, he would be willing to recommend to the trustee a modification of their leases to Metropolis Theatre Company, stating that inasmuch as Metropolis Theatre Company was subject to losing all of its rights under those leases and was therefore risking nothing, while the estate was contributing its land and risking its rent, he would recommend a modification as hereinafter stated; that he further stated that the proposition which he would recommend, if it were made to him by Metropolis Theatre Company, was conditioned upon

a modification also of the leases from the Thompson trustees and Metropolis Theatre Company to 32 West Randolph Corporation; that the said modification would have increased the Metropolis Theatre Company's rental from 66⅔ per cent of the total rent required to be paid by the 32 West Randolph Corporation to Metropolis Theatre Company and the Thompson trustees to 75 per cent thereof, and would have required the Thompson trustees to reduce their rent accordingly, that is from 33⅓ per cent to 25 per cent of such aggregate rentals. The reply further states that one of the trustees suggested that if Metropolis Theatre Company was interested in a modification of the leases to it, that they ascertain from the Thompson trustees what their attitude would be with respect to modifying their lease to the 32 West Randolph Corporation, but that the representatives of the Metropolis Theatre Company said they thought it would be better if he would present the situation to the Thompson trustees, and solely because of that request, plaintiffs' trustee submitted to the Thompson trustees the question as to whether they would be willing to modify their lease in the manner stated; that when the Thompson trustees refused, plaintiffs' trustee notified the Metropolis Theatre Company to that effect and that plaintiffs would have to pursue what remedies they might have. Plaintiffs' reply further states that they at no time have overreached or attempted to overreach the Metropolis Theatre Company in any manner or attempted to force it into a position where it would consent to any proposal; that as a matter of fact, the suggestion made as aforesaid to Metropolis Theatre Company for a possible compromise in case it could not make good its default, would have enabled the Metropolis Theatre Company, if all the leases had been modified in accordance with the terms of the suggestion, to receive an annual profit of over $21,000 provided that the 32 West Randolph Corporation would

pay rental to Metropolis Theatre Company in accordance with such modified lease, and further provided that as suggested, 75 per cent of Metropolis Theatre Company's net income from plaintiffs' premises be paid plaintiffs.

No testimony was heard, and based on the complaint, answer and reply, the court entered an order appointing a receiver *pendente lite*. The receiver was authorized and directed until the further order of the court, to take possession of, manage and control all of the said rights and interests of the Metropolis Theatre Company under the two leases, and also to collect the rents, issues and profits which now are, or at any time hereafter may become due and payable to defendant Metropolis Theatre Company from defendant 32 West Randolph Corporation under the lease between the said two defendants, and also to collect the rents, issues and profits, whether now due or hereafter to become due from any subtenants in possession of space which lies wholly within the boundaries of plaintiffs' property, and also to collect such portion of the rents, issues and profits as shall be allocated by the court to plaintiffs' property, whether now due or hereafter to become due, from subtenants who occupy space in the building, which space is partly on the property of plaintiffs and partly on the property of the Thompson trustees; also to apply all such rents, issues and profits collected by him as such receiver to the payment of delinquent taxes and interest thereon levied and assessed against the premises of plaintiffs. From the aforesaid interlocutory order, defendant Metropolis Theatre Company prosecutes this appeal. A separate appeal has been taken by the 32 West Randolph Corporation, Southern Theatre Properties, Inc., and the trustees under the last will of John R. Thompson, deceased.

The first contention of defendants is that the lien granted to plaintiffs does not apply to the covenant to pay taxes. The pertinent language is that "the lessors

shall have a first and valid lien (which is hereby given them) upon the rights and interests of the lessee under this lease . . . to secure the prompt performance and fulfillment by the lessees of each and every one of their engagements and undertakings hereunder.'' It cannot be doubted that under the ground leases a positive duty was imposed on lessees to pay the taxes in due time. The language quoted is unambiguous and we are of the opinion that it gives the lessors a lien to secure the prompt performance of the covenant to pay taxes. Paragraph 13 of the ground lease provides that if the lessees fail to pay the taxes, the lessors may at their option advance and pay the same, and that it shall then be the duty of the lessees to repay the lessors within 90 days after notice of such payment, with interest at the rate of 6 per cent per annum from the time the payment for taxes was advanced. That provision does not affect the right of the lessors to a lien. If the lessors did not have the funds handy or did not choose to pay the taxes under paragraph 13, nevertheless the obligation of lessee to pay was not diminished. It follows that under the leases plaintiffs have a right to file a complaint to foreclose based on failure to pay taxes.

The second point urged is that a lease cannot be forfeited on the ground of failure of the tenant to comply with the covenant that he shall pay taxes, before any attempt is made to enforce a personal liability against the owner. It is unnecessary to discuss that proposition, as no attempt has been made to forfeit the lease.

The third point urged is that plaintiffs have waived their right to declare a forfeiture and that by analogy the same rule of law will be applied in an attempt to enforce the lien. Undoubtedly a person by his conduct may be estopped from asserting a right to enforce a covenant. The actions of plaintiffs, as disclosed by the pleadings, do not present any issue of waiver or estoppel. The obligation to pay the taxes was present

during all the negotiations. The fact that the parties negotiated does not in any way estop plaintiffs from insisting on the provisions of the lease being carried out. The plaintiff trustees should not be criticized for their forbearance. Even now they are not attempting to forfeit the leases.

A fourth criticism leveled at the action in appointing the receiver is that the nonpayment of taxes is not a ground for the appointment of a receiver. Within the past few years the tax situation in the Chicago area has given rise to difficult problems. Some properties are delinquent in taxes to such an extent that they are worth less than the total tax bills. We cannot agree with the statement that the nonpayment of taxes is not grounds for the appointment of a receiver for rents. That would depend upon the facts of each case. In Cook county the appointment of the county collector for the purpose of collecting taxes under the so-called Skarda Act is not uncommon.

Finally, defendants point out that great caution is required in appointing a receiver. There is no contention by plaintiffs that the property is being mismanaged or that waste is being committed. Apparently, the management is satisfactory. There has been no default in the payment of the stipulated rent. An issue has been joined as to whether the Metropolis Theatre Company is in fact insolvent. Its answer admits that it does not have funds at the present time sufficient to pay the taxes. Its only available assets apparently are the leasehold sought to be foreclosed and the right to receive the rent under its subleases with the 32 West Randolph Corporation. From the pleadings we cannot find that Metropolis Theatre Company is insolvent. As a practical matter, however, the ability of Metropolis Theatre Company to pay the amount in arrears of taxes depends upon the payments which it receives from the 32 West Randolph Corporation. Before the court could appoint a receiver, it was necessary for

plaintiffs to make a showing that their security was inadequate. The question to be resolved is whether the action of the court in appointing a receiver was reasonable under the factual situation existing at the time the appointment was made. The pleadings show that in 1935 when the tax situation first came to the attention of plaintiffs, there was a delinquency in taxes of approximately $240,000. Adding the tax bills for 1936 and 1937, at the time the receiver was appointed there was a total tax liability of $412,000. All of these taxes have been paid except approximately $65,000, plus the interest thereon. Bills for the 1938 taxes are now being distributed to the taxpayers. The answer of Metropolis Theatre Company states that $56,000 was applied on taxes in May, 1938, and that since then all available revenues from the Chicago Real Estate Board Building have been applied to the payment of taxes, and also declares that it does not intend to nor will it receive any payments as rent until all defaulted taxes have been paid. It consents to the issuance of an injunction restraining the 32 West Randolph Corporation from making payments to Metropolis Theatre Company and restraining the Metropolis Theatre Company from receiving payments until the defaults in taxes have been cured. Defendants maintain that if it is given an opportunity, all taxes and interest, including taxes for the year 1938 payable in 1939, as well as rent, will be paid by December 1, 1939. Apparently, what precipitated the action of plaintiffs in asking for the appointment of a receiver was the failure of the 32 West Randolph Corporation to enforce the performance of its lease by the Oriental Theatre Company. In November, 1938, a lease for the theatre was made between the 32 West Randolph Corporation and the Southern Theatre Properties, Inc. Defendants assert that the rent from the Southern Theatre Properties and from the other tenants will be adequate to pay plaintiffs their rent as well as delin-

quent and current taxes. Plaintiffs' complaint alleged that the leasehold is not adequate security. Defendant Metropolis Theatre Company asserted to the contrary. The pleadings show that since 1935 Metropolis Theatre Company has paid almost all the taxes that were delinquent. The order appointing the receiver does not give any specific directions as to the operation of the property. In view of the fact that the building is located on parcels owned by different persons, the operation of the property without an agreement between the owners would be difficult. There is no privity between plaintiffs and the 32 West Randolph Corporation, nor between plaintiffs and the Thompson trustees. The 32 West Randolph Corporation has been operating the entire property, and no charge of mismanagement or waste has been leveled against the managers. It is undisputed that all the net rents for some considerable period and at the present time are being applied on the tax delinquencies. The Metropolis Theatre Company states that it is desirous of continuing to so apply the rents. We realize that the Metropolis Theatre Company is obligated to pay the taxes regardless of whether any rents are received. It must be remembered that issues have been joined on material matters and that no evidence was heard as to the value of the leasehold. The property is well located in the rialto. In view of the record of tax payments within the last two years, the fact that all the net rents are being applied on taxes, that there are no charges of mismanagement or waste, and that the Metropolis Theatre Company agreed to consent to the issuance of an injunction which would restrain that company and the 32 West Randolph Corporation from receiving any rents until all delinquent and current taxes are paid, and the conflict as to the adequacy of the security, we are of the opinion that the action of the court in appointing a receiver was erroneous. When the receiver's account is presented (and in view of the statements

made in the briefs by defendants of their desire to apply the rents to clear up the tax delinquencies), the chancellor will have the right to direct that the funds in the hands of the receiver be so applied.

For the reasons stated, the order of the circuit court of Cook county is reversed.

*Order reversed.*

Denis E. Sullivan, P. J., and Hebel, J., concur.